UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Prepared Insurance Company,      Civil No. 16-1775 (DWF/SER)
a Florida Corporation,

           Plaintiff,

v.                                                      **MEMORANDUM**
                                                  **OPINION AND ORDER**

Zags, Inc., a Delaware
Corporation,

           Defendant.

_____

Anne T. Regan, Esq., Joseph P. Beckman, Esq., and Raymond R. Bonnabeau, Esq., Hellmuth & Johnson, PLLC counsel for Plaintiff.

Kurt J. Niederluecke, Esq., Ted C. Koshiol, Esq., and Timothy M. O'Shea, Esq., Fredrikson & Byron, P.A., counsel for Defendant.

_____

## INTRODUCTION

This matter is before the Court on a Motion to Dismiss brought by Defendant Zags, Inc. ("Zags"). (Doc. No. 14.) For the reasons set forth below, the Court grants in part and denies in part the motion.

## BACKGROUND

Plaintiff Prepared Insurance Company ("Prepared") sells property and casualty insurance products to individual homeowners and real property owners throughout the

state of Florida.  (Doc. No. 1, Compl. ¶ 7.)  Zags[1] designs and develops insurance software and solutions.  (*Id.* ¶ 8.)  Zags marketed its software as having broad functionality in multiple facets of the insurance industry, such as "product design . . . sales and marketing . . . underwriting, policy administration, billing, claims, and more." (*Id.*)

In September 2013, Zags pitched its products and services to Prepared and, in particular, offered a "comprehensive software solution" that would support all lines of Prepared's business operations.  (*Id.* ¶ 12.)  Zags indicated that it would use an existing product as a foundation for the software, thus requiring minimal customization or modification to meet requirements specific to Prepared.  (*Id.* ¶ 13.)  The parties met again in February 2014 and Zags represented that it was capable of delivering a "three layered" comprehensive, customized software program.  (*Id.* ¶¶ 14-15.)  The layers were to consist of:  (1) a "Core Layer" that would span "all geographies"; (2) a "US Layer" containing "functionality common to the US"; and (3) a "Prepared Layer" (later the "Florida Layer") that would be customized to Prepared and would be Prepared's intellectual property.  (*Id.* ¶ 15.)

Prepared alleges that Representatives of Zags' made the following representations: (1) Zags was capable of transitioning Prepared to the software package for approximately $1.6 million; (2) Zags had already developed the "US Layer," so that portion of the

---

[1]   Zags was formerly known as Insurance Global Operations, Inc. ("IGO"). (Compl. ¶ 3.)  The Court refers to both Zags and IGO as "Zags."

software required only limited supplementation to meet Prepared's geographic needs; (3) Zags was capable of providing software functionality equal to, or greater than, that which Prepared used as of February 2014, at least by December 2015; (4) Zags was capable of completing Prepared's transition to Zags' comprehensive software by December 2015; and (5) Zags was capable of completing Prepared's transition to Zags' comprehensive software through just over 2,200 employee/contractor days of total labor. (*Id.* ¶ 16(a)-(e).)

Prepared further alleges that all of above representations made by Zags were false. (*Id.* ¶ 17(a)-(f).)  Specifically, Prepared alleges that:  (1) Zags was not capable of transitioning Prepared to the promised comprehensive software package at or near the cost of $1.6 million; (2) the software offered by Zags did not substantially exist in any form usable by Prepared in the "Core Layer" form and no usable version of the "Core Layer" has been delivered; (3) Zags had not already developed and maintained a usable "US Layer" in any form usable by Prepared and no usable version has been delivered; (4) Zags has not, at any time since February 2014, been capable of providing software functionality equal to or greater than that which Prepared already employed and has not delivered any such functioning software; (5) Zags was not capable, at any time since February 2014, of completing Prepared's transition to Zags' software by December 2015; and (6) Zags was not capable of completing Prepared's transition to Zags' software through over 2,200 days of total labor.  (*Id.*)

On or about June 27, 2014, Prepared and Zags entered into a License and Services Agreement (the "Agreement"). (*Id.* ¶ 19; Doc. No. 17 ("O'Shea Decl.") ¶ 2, Ex. A ("Agreement").)[2] Plaintiff alleges that the Agreement required Zags to provide a customized, functional software product. (Compl. ¶ 20.) The Agreement also provided three conditions to be met in order for the software to be deemed accepted by Prepared:

> The Software . . . will be deemed accepted by the Client when the earliest of the following occurs:
> []    the Client has completed the User Acceptance Testing and delivered to [Zags] written notice of acceptance; or
> []    the Software has been installed and is used by the Client for live or commercial use; or
> []    a version of the Software has been installed and been available to the Client for User Acceptance Testing for a period of sixty (60) days and there are no Serious Errors (having been notified to [Zags]) outstanding for correction by [Zags] and [Zags] offers to make the Software available for live or commercial use.

(Agreement §§ 9.5.1-9.5.3.)

In exchange, Prepared was obligated to pay for services, including software development, maintenance, hosting, and licensing. (Agreement § 3.) The software development services to be provided by Zags are described in a Statement of Work ("SOW") attached to the Agreement. (*Id.* § 3.3, Schedule 4 ("SOW").) Under the Agreement, Prepared agreed that fees would be charged on a "Time and Materials Basis." (Agreement § 3.4.1; SOW § 2.) The SOW also provides that Zags "shall provide the

---

[2]  The Agreement is governed by the laws of the State of Minnesota. (Agreement § 18.)

following Project Services Prepared Requirements Phase A [], delivered as per Prepared Project Plan 11Mar2014 under this [SOW]." (SOW § 1.)[3] The Project Plan provided a "go live" date of January 12, 2015. (Doc. No. 22 ("Regan Decl.") ¶ 3, Ex. 1.) The SOW further outlined fees and implementation days needed to develop the software "based on the information available to [Zags] at the time." (SOW §§ 2, 2.1.) The SOW also states that:

> All fee estimates or quotations and timescales given by [Zags] in relation to the Project Services are given in good faith based on the information available to [Zags] at the time; however they are intended to be estimates only and are not guarantees of the cost or timescales of the Project Services.

(*Id.* § 2.1.) Similarly, the Agreement expressly states:

> If [Zags] provides [Prepared] with an estimate of the cost or time to be taken for any Services to be provided by [Zags], the estimate will be made in good faith based on the information known to [Zags]. However, [Zags] does not promise that estimates will be accurate and estimates are not intended and shall not be treated as price or performance guarantees. Time for delivery of the Software and the Services under this Agreement shall not be of the essence.

(Agreement § 3.8.) The SOW also provides that timescales are given in good faith and are intended to be estimates only. (SOW § 2.1.) Further, Prepared agreed that it "bears the risk of cost overruns and delays on work performed on Time and Materials Basis." (*Id.* § 3.4.)

The Agreement also provided for the exchange of Confidential Information, and the parties acknowledged that they would "receive and may otherwise (both incidentally

---

[3] The March 2014 Project Plan was attached to the SOW. (Doc. No. 22 ("Regan Decl.") ¶ 3, Ex. 1.)

and in the course of such co-operation) become aware of or be exposed to certain information (including without limitation Confidential Information) of the Disclosing Party." (Agreement § 10.1.) "Confidential Information" includes, without limitation:

> [T]rade secrets and other information relating to the business and affairs of a Party (and/or any company within its Group) including without limitation existing business, corporate and product development plants, concepts or ideas, marketing, customer technical and other data and equipment or computer software (source or object code) and intellectual property, proposals, budgets, statistical information and know-how techniques and the terms of this Agreement . . . .

(Agreement § 2.6.2.) Prepared Insurance alleges that it provided and transmitted trade secret information, proprietary business information, intellectual property, and "Confidential Information" to Zags, and that Zags incorporated or used that information in its software development. (Compl. ¶¶ 22-23.)

Prepared alleges that over the course of the parties' relationship under the Agreement, it paid Zags over $1.8 million, but Zags never delivered the promised product or services. (*Id*. § 17(a).) Prepared also alleges that Zags was not, at any time since February 2014, capable of transitioning Prepared to a comprehensive software package at a cost at or near $1.6 million, and that the representations that Zags made regarding its ability to deliver were untrue. (*Id*. ¶¶ 16-17.) In addition, Prepared asserts that Zags demanded that Prepared advance additional monies to Zags, in excess of $3.5 million, for a product that did not pass the User Acceptance Testing phase, was behind schedule, and had not delivered any of the promised improvements. (*Id.* ¶ 17(a)-(f).) In addition,

Prepared claims that it never deemed acceptable any software it received and, thus, none of the "user acceptance" provisions was satisfied. (*Id*. ¶¶ 20-21.)

Zags submits that on April 5, 2016, it notified Prepared that it had unpaid invoices.[4] Zags further contends that on April 28, 2016, it notified Prepared that, pursuant to Section 5.3 of the Agreement, it would suspend performance of its services on May 28, 2016, because Prepared stopped paying Zags. Prepared asserts that as of April 28, 2016, Zags demanded that Prepared advance additional monies to cover the excess of 8,300 days of Zag's alleged staff labor. (Compl. ¶ 17(f).) Prepared alleges that it believes that Zags has closed its offices in Minnesota and New York, and that Prepared filed this action to protect its rights under the Agreement. (*Id.* ¶ 24.)

On May 31, 2016, Prepared filed the present action, asserting the following claims: (1) Breach of Contract (Count One); (2) Fraudulent Misrepresentation (Count Two); and (3) Gross Negligent Misrepresentation (Count Three). (Compl. ¶¶ 26-43.) Prepared asserts, among other things, that none the representations made during the pitch of the software products turned out to be true and that Prepared never received any functional software product from Zags. (*Id*. ¶¶ 17, 20-21.) Prepared also alleges that in conformance with the Agreement, it provided Zags with Confidential Information, and that Zags did not abide by the provisions of the confidentiality provisions. (*Id*. ¶¶ 22-23.)

Zags now moves to dismiss Prepared's claims in their entirety.

---

[4]   Zags asserts this in its opening brief without citation to the record. (Doc. No. 16 at 5.)

## DISCUSSION

### I. Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). However, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. The United States Supreme Court further reiterated that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a

reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II.   Breach of Contract

In Count One, Prepared asserts a claim for breach of contract.  Specifically, Prepared asserts that Zags breached the Agreement by:  (1) failing to deliver the contracted products and services within the agreed upon time period; (2) failing to deliver the completed software at the agreed upon price; (3) failing to abide by the Agreement's confidentiality provision; and (4) committing additional material breaches.  (Compl. ¶ 28.)  The elements of a breach of contract claim are:  (1) formation of a contract; (2) performance by plaintiff of any conditions precedent; and (3) breach by the defendant. *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014).

### A.   Delivery of Contracted Products and Services

Zags argues that Prepared cannot state a claim for breach of contract that is based on a failure to deliver the completed software within a particular time period or at a certain price.  Zags argues that any such allegation fails as a matter of contract interpretation because the parties never agreed to a set price or a deadline for the delivery of the software.  Zags points out that the Agreement states that services would be provided on a time-and-materials basis, time was not of the essence, fee estimates are not guarantees, and fee estimates and timescales were "given in good faith based on the information available" and "intended to be estimates only."  Finally, Zags points out that the Agreement provides that Prepared "bears the risk of cost overruns and delays."

9

Prepared argues that, despite specifying that the work would be done on a time-and-materials basis, Zags was required to provide the customized software pursuant to the SOW, which provided specific deliverables and deadlines as outlined in an attached Project Plan, including a "go live" deadline of January 12, 2015. Prepared argues that the Project Plan evinces the parties' intent that Zags would perform under the Agreement by January 12, 2015. Prepared asserts that Zags, being unable to meet that deadline, sought an amendment to the SOW to note "changes in the estimates to the original scope." (SOW Amend. 1 § 1.) Prepared contends that in the amendment, Zags promised to complete its work by December 2015 in exchange for more than $500,000 in additional payments. (*Id.*)[5] Prepared also points out that the Agreement requires that Zags' estimates be made "in good faith based on the information known to [Zags]." (Agreement § 3.8.) Prepared further asserts that the allegations in its Complaint impugn Zags' good faith and submits that, even before it signed the Agreement, Zags knew that it was incapable of delivering the customized software it promised at any price and in any time frame. (Compl. ¶¶ 15-17.)

The Court recognizes that the Agreement provides estimates for the total cost and completion dates of the project, and that the project was to be completed on a time-and-materials basis. However, Prepared's basis for its breach of contract claim is

---

[5] Zags points out that the original Project Plan is dated nearly four months before the Agreement was executed and submits that Prepared cannot rely on this estimate to rewrite the plain language of the Agreement. Zags also argues that the December 2015 date contained in the amendment to the SOW was not intended to impose a hard deadline.

broader than simply alleging a breach for failure to deliver the software by a particular deadline and for a particular amount of money.  Instead, Prepared alleges that Zags knew it was incapable of completing the software project at all, let alone under the estimates it provided in terms of cost and time.  In addition, Prepared alleges that Zags wholly failed to deliver a functional software product regardless of whether the Agreement required it to meet a specific delivery date or cost.  Moreover, the Agreement explicitly required Zags to make its delivery and time estimates based "in good faith based on the information known," and Prepared specifically alleges that Zags failed to operate in good faith in making these estimates.  Based on these alleged facts, which the Court must accept as true at this stage, the Court concludes that Prepared has stated a viable claim for breach of contract based on the alleged non-delivery of a functional product under the Agreement.  In short, Prepared asserts that Zags failed to deliver what it promised, and that failure could constitute a breach.

### B.   Confidential Information

Under the Agreement, the parties anticipated that confidential information would be transmitted during the course of their relationship.  Prepared alleges that "Prepared [] did provide and transmit trade secret information, propriety business information, intellectual property, and 'Confidential Information' to Zags," and that Zags failed to abide by the confidentiality provision.  (Compl. ¶¶ 22, 29.)

Zags argues that Prepared's claim for breach of the Agreement's confidentiality provision fails because the allegations supporting such a claim are conclusory and fail to

set forth sufficient supporting facts.  In particular, Zags argues that Prepared does not identify what confidential information it provided to Zags and does not allege that Zags improperly disclosed any such information.

The Court agrees.  To state a claim for relief, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of the Rule is to give a defendant "fair notice of what plaintiff's claim is and the grounds upon which it rests[.]."  *Hanson v. Hunt Oil Co.*, 398 F.2d 578, 581 (8th Cir. 1968).  The Court concludes that Prepared's pleading is insufficient to raise a right to relief above a speculative level on this claim.  Prepared has not pled facts showing what confidential information it provided to Zags or how Zags improperly disclosed or used any of the information.  The Court therefore dismisses without prejudice Prepared's breach of contract claim based on the breach of the confidentiality provision.[6]

### III.    Fraudulent Misrepresentation

In Count Two, Prepared asserts a claim for fraudulent misrepresentation.  Specifically, Prepared asserts that Zags made the following misrepresentations:  (1) Zags was capable of transitioning Prepared to a comprehensive software package at a total

---

[6]  Prepared also alleges that Zags breached the Agreement by "[c]omitting other material breaches." (Compl. ¶ 28(d).)  Zags argues that these allegations are vague, conclusory, and deficient.  Prepared did not discuss any additional material breaches in its opposition.  The Court dismisses any claims based on this allegation without prejudice.

estimated cost of approximately $1.6 million; (2) Zags had already developed and maintained the "US Layer" portion of the software, such that that portion need only be supplemented and tailored on a limited basis; (3) Zags was capable of providing software functionality equal to or greater than that which Prepared Insurance already used, completing the work at least by December 2015; (4) Zags was capable of completing the transition to the comprehensive software system by December 2015; and (5) Zags was capable of completing the transition through approximately 2,200 days of total labor. (Compl. ¶¶ 32(a)-(e).)  Moreover, Prepared alleges that Zags knew these representations were false, Zags intended for Prepared to rely on the representations, and that Prepared justifiably relied on the representation causing it damage.  (*Id.* ¶¶ 33-35.)

To state a claim for fraudulent misrepresentation under Minnesota law, a plaintiff must demonstrate that:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffered pecuniary damage as a result of the reliance.

*Stumm v. BAC Home Loans Servicing, LP*, 914 F. Supp. 2d 1009, 1013 (D. Minn. 2012) (citing *Hoyt Props., Inc. v. Prod. Res. Grp., LLC*, 736 N.W.2d 313, 318 (Minn. 2007) (internal quotations omitted)).  Moreover, a plaintiff must demonstrate both actual and reasonable reliance.  *Hoyt*, 736 N.W.2d at 320-21.

Zags moves to dismiss this claim, making the sole argument that Prepared could not, as a matter of law, have reasonably relied on the above alleged misrepresentations because those statements are contrary to the terms of the Agreement. Zags argues that each of the alleged misrepresentations is expressly contradicted by a term of the Agreement: namely, that the Agreement provided that the total cost and timing of the project were estimates and that Zag's services would be provided on a time-and-materials basis.

Zags relies on cases that stand for the general proposition that a plaintiff cannot rely on a defendant's representation when reliance directly contradicts a provision of a contract. *See, e.g.*, *Commercial Prop. Invs., Inc. v. Quality Inns, Int'l, Inc.*, 938 F.2d 870, 875 (8th Cir. 1991) (stating general rule that where a contract provision is completely antithetical to a claimed misrepresentation, a claim of fraud fails); *OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Research*, 132 F. Supp. 3d 1119, 1124-25 (D. Minn. 2015) ("[A] plaintiff cannot rely on a defendant's representations when the plaintiff's reliance directly contradicts a provision of the contract."). Specifically, in *OmegaGenesis*, the court held that "OmegaGenesis has failed to adequately allege reliance on Mayo's representations" in light of the terms of the parties' contract. *OmegaGenesis*, 132 F. Supp. 3d at 1125. Further, in *OmegaGenesis*, the alleged fraudulent representation touched on the patentability and development of a particular technology, and the contradictory terms in a License Agreement included a specific and general disclaimer and integration clause. *Id*. In particular, the License Agreement stated

that OmegaGenesis "independently evaluated the Patent Rights . . . [and] is entering into this Agreement on its own evaluation and not in reliance of any representation by Mayo." *Id*.

Here, there is no general or specific disclaimer in the Agreement that would limit Prepared's ability to bring a claim for fraudulent misrepresentation. Indeed, Section 7 of the Agreement provides: "Nothing in this Agreement shall limit or exclude . . . [Zag's] liability for . . . losses arising out of its willful misconduct, gross negligence, fraudulent acts or omissions." (Agreement §§ 7.1, 7.1.2.) In addition, in its Complaint, Prepared alleges that Zags made false representations that may not be squarely contradicted by terms of the Agreement. For example, Prepared alleges that Zags made the false representation that "Zags had already developed and maintained the 'US Layer' portion of the software, such that the software need only be supplemented and tailored on a limited basis to meet the particular and geographical needs of [Prepared], and such that Zags already had 'most of what [Prepared ] need[ed]." (Compl. ¶ 16(b).) At the heart of Prepared's fraudulent misrepresentation claim is that Zags allegedly knew that it was incapable of delivering any functioning software in any time frame or at the estimated price, yet it told Prepared otherwise. Accepting Prepared's allegations as true, the Court concludes that Prepared has stated a claim for fraudulent misrepresentation. Accordingly, Zag's motion to dismiss is denied as to Count Two.

## IV. Negligent Misrepresentation

In Count Three, Prepared asserts a claim for negligent misrepresentation. The elements of a negligent misrepresentation claim are: (1) the supply of false information to another person in order to guide that person in his or her own business transactions; (2) failure to use reasonable care or competence in obtaining the information or communicating the information to the other person; (3) justifiable reliance by the other person on the information; and (4) financial harm as a result of that reliance. *See Hardin County Sav. Bank v. Housing and Redevelopment Auth.*, 821 N.W.2d 184, 191-93 (Minn. 2012).

Zags moves to dismiss this cause of action, arguing that Prepared cannot demonstrate reasonable reliance and because Zags owed no duty of care to Prepared. For the reasons discussed above with respect to Prepared's fraudulent misrepresentation claim, the Court concludes that Prepared has sufficiently alleged the element of reasonable reliance. However, under Minnesota law, an essential element of negligent misrepresentation is that the alleged misrepresenter owes a duty of care to the person to whom they are providing information. *Smith v. Woodwind Homes, Inc.*, 605 N.W.2d 418, 424 (Minn. Ct. App. 2000) (citing *Safeco Ins. Co of Am. v. Dain Bosworth Inc.*, 531 N.W.2d 867, 873 (Minn. Ct. App. 1995).) Where adversarial parties negotiate at arm's length, there is no duty of care. *Id.* Here, there is no allegation in the Complaint suggesting that Zags and Prepared were anything other than parties engaged in an arm's-length commercial transaction or that Zags owed Prepared a duty of care.

16

Therefore, the Court concludes that Prepared's claim for negligent misrepresentation is properly dismissed.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss (Doc. No. [14]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. Count One is **DISMISSED WITHOUT PREJUDICE** insofar as it asserts a claim for breach of contract based on the confidentiality provisions of the Agreement; and

    b. Count Three is **DISMISSED WITH PREJUDICE**.

Dated:  March 3, 2017  	s/Donovan W. Frank
 	DONOVAN W. FRANK
 	United States District Judge